**23ᴿᴰ JUDICIAL DISTRICT COURT FOR THE PARISH OF ASSUMPTION**

**STATE OF LOUISIANA**

NO. 38656　　　　　　　　　　　　　　　　　　　　　　DIVISION: **B**

**TEXAS BRINE COMPANY, LLC**

**VERSUS**

**LEGACY VULCAN, LLC, F/K/A LEGACY VULCAN CORP. F/K/A VULCAN MATERIALS COMPANY AND JACK DURLAND**

FILED: __JUL 29 2022__　　　　　　　__Mia Clement__
　　　　　　　　　　　　　　　　　　　　　　**DEPUTY CLERK**

## PETITION FOR DAMAGES, INDEMNITY, AND CONTRIBUTION

Texas Brine Company, LLC ("Texas Brine"), asserts this Petition for Damages, Indemnity, and Contribution against Legacy Vulcan, LLC, f/k/a Legacy Vulcan Corp. f/k/a Vulcan Materials Company ("Vulcan") and Jack Durland, averring as follows:

### PARTIES

1.

Texas Brine is a Texas limited liability company, and its principal place of business is located in Texas.

2.

Vulcan is a limited liability corporation organized under the laws of Delaware and its principal place of business is located in Birmingham, Alabama.

3.

Jack Durland is a citizen and domiciliary of Texas. Upon information and belief, Mr. Durland lives in San Antonio, Texas.

### JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction over this matter pursuant to Louisiana Constitution Article V, § 16.

5.

Venue is proper in Assumption Parish, Louisiana because the acts, harms, and omissions that form the subject matter of this dispute occurred in Assumption Parish.

**EXHIBIT 1**

## BACKGROUND

6.

Texas Brine operated three salt wells, pursuant to the Operating and Supply Agreement, dated October 29, 1975 and the Amended and Restated Operating and Supply Agreement, dated January 1, 2000 (collectively referred to as the "Operating Agreements"), on land owned by Occidental Chemical Corporation ("OxyChem") in Assumption Parish, Louisiana (the "Salt Lease Premises"): the Oxy Geismar Well #1 ("OG1"); the Oxy Geismar Well #2 ("OG2"); and the Oxy Geismar Well #3 ("OG3"). Vulcan was the lessee of the Salt Lease Premises from 1976 until 2005.

7.

Texas Brine owns two of the three salt wells located on the Salt Lease Premises, as well as related equipment and infrastructure used in the brine mining operations, including a 19-mile pipeline extending from the Salt Lease Premises to the Geismar plant (the "Pipeline").

8.

The Pipeline and other facilities owned by Texas Brine were leased to Vulcan pursuant to the Construction Contract and Facilities Lease, dated October 29, 1975 and the Amended and Restated Facilities Lease Agreement, dated January 1, 2000.

9.

Under Section 12.03 of the Operating and Supply Agreement and Section 12.3 of the Amended and Restated Operating and Supply Agreement between Vulcan and Texas Brine, Vulcan agreed to indemnify Texas Brine for "all losses and all claims, demands, payments, suits, actions, recoveries, and judgments … of every nature and description brought, recovered or arising out of the sole negligence of Vulcan." Vulcan further agreed to indemnify Texas Brine for "one-half of all losses and all claims, demands, payments, suits, actions, recoveries and judgments … of every nature and description, brought, recovered or arising out of the joint and concurring negligence" of Vulcan and Texas Brine.

10.

Additionally, pursuant to Section 12.6 of the Amended and Restated Operating and Supply Agreement, Texas Brine is entitled to reimbursement of all costs incurred in complying with all laws, rules, orders, ordinances, directions, and regulations of federal, state, county, and municipal

2

authorities pertaining to the operations of the OG1, OG2, and OG3 caverns. Additionally, through custom and practice between Texas Brine and Vulcan, Vulcan has always reimbursed Texas Brine for damages, losses, and expenses incurred in operating the OG1, OG2, and OG3 caverns.

11.

On August 3, 2012, a sinkhole appeared in Bayou Corne, Louisiana (the "Sinkhole"), as a result of the failure of the cavern created by the operation of the OG3 well.

12.

Texas Brine, Vulcan, and OxyChem participated in a trial in Assumption Parish, Louisiana in 2017 that determined percentages of fault of Texas Brine, Vulcan, and OxyChem with respect to the cause of the Sinkhole. Texas Brine, Vulcan, and OxyChem were all assigned portions of fault. On appeal of the liability trial judgment, Vulcan was assigned 15% liability for its role in causing the Sinkhole, and Texas Brine was assigned 55% liability. The Louisiana First Circuit Court of Appeal further found that Vulcan committed intentional acts solely for its economic benefit that, in part, caused the sinkhole. *See Pontchartrain Natural Gas System v. Texas Brine Company, LLC*, 2018-1249, pp. 59, 60, 67 (La. App. 1 Cir. 12/30/20), 317 So. 3d 715, 756, 757, 760.

13.

This finding of intentional fault against Vulcan was based on the actions of former Vulcan Director of Purchasing Jack Durland. In 2004, OxyChem was conducting due diligence in connection with the contemplated purchase of multiple Vulcan facilities, including the Geismar chloralkali plant for which Texas Brine provided the brine supply. Brine is a vital feedstock for a chloralkali plant. OxyChem's purchasing manager asked Mr. Durland about the long-term brine supply at Geismar, and, in turn, Mr. Durland relayed that inquiry to Texas Brine's president, Ted Grabowski.

14.

Mr. Grabowski e-mailed a detailed response to Mr. Durland on June 4, 2004. That response included a warning concerning the risks of prematurely losing the OG3 brine well.[1] Mr. Durland

---

[1] *See* Exhibit A, E-mail from Ted Grabowski to Jack Durland, June 4, 2004.

3

cut-and-pasted Mr. Grabowski's e-mail in responding to Mr. Thomas – but deleted Texas Brine's warning concerning the proximity of the OG3 cavern to the edge of the salt dome.[2] The following language was deleted by Vulcan in responding to OxyChem:[3]

> (I should point out that two wells are required in service at all times to meet your required flow rate... say 1300 gpm). As you know, **well #3 is the biggest concern**, since our data and your consultant have suggested that it is very close to the edge of salt. As a result, there is a **real risk of losing this well prematurely**, with little notice, due to washing out of the formation. This risk and the current availability of [Texas Brine] property in close proximity to your existing facilities are the primary justifications for pursuing additional reserves at this point.

15.

The Louisiana First Circuit Court of Appeal later held that all disputes between Texas Brine and OxyChem were to be arbitrated. Texas Brine and OxyChem participated in Phase I of an arbitration proceeding, and the arbitrators ruled that all claims by and between Texas Brine and OxyChem must be arbitrated. Phase II of the arbitration proceeding is set to commence on May 1, 2023.

16.

In Phase II of that arbitration proceeding, OxyChem will pursue claims against Texas Brine for damages relating to the Sinkhole, including damages to OG1, OG2, and OG3, other damages caused by the failure of OG3, damages arising out of the inability to develop two other planned wells—Oxy Geismar #11 ("OG11") and Oxy Geismar #12 ("OG12"), as well as attorneys' fees. In addition to seeking monetary damages, OxyChem has also asserted that Texas Brine is in default of its contractual obligations under the Amended and Restated Operating and Supply Agreement and the Amended and Restated Facilities Lease Agreement. OxyChem claims that, as a result of these purported defaults, it is entitled to the contractual remedy of specific performance which would allow OxyChem to take possession, control, and ownership of Texas Brine's Pipeline.[4] OxyChem's claims are contained in its Statement of Claims and Initial Disclosure of Damages

---

[2] *See* Exhibit B, E-mail from Jack Durland to Jim Thomas, June 4, 2004.

[3] *Compare* Exhibit A, Grabowski E-mail, June 4, 2004, with Exhibit B, Durland E-mail, June 4, 2004 (emphasis added).

[4] Texas Brine expressly denies that it is in default of any contractual obligations, or that OxyChem is entitled to any relief whatsoever.

4

(collectively referred to as "Statement of Claims"), copies of which are attached hereto as Exhibit C *en globo* and incorporated herein as if copied *in extenso*.

17.

While Texas Brine denies that it has defaulted under any contractual obligations or that OxyChem is entitled to such relief, in the event that OxyChem prevails on its default claim and is awarded possession of Texas Brine's Pipeline, Texas Brine projects the replacement cost of the Pipeline as exceeding $45 million.

18.

The State of Louisiana also asserted claims against Texas Brine for damages relating to the sinkhole. In *State of Louisiana v. Texas Brine*, Case No. 34,391, 24th Judicial District Court, the State of Louisiana in its Petition for Damages and First Amending and Supplemental Petition for Damages sought from Texas Brine, among other things, reimbursement for remedial costs incurred responding to and containing the Sinkhole. Copies of the State of Louisiana's Petition for Damages and First Amending and Supplemental Petition for Damages are attached hereto as Exhibit D *en globo* and are incorporated herein as if copied *in extenso*.

19.

On or about October 8, 2021, the Louisiana Department of Environmental Quality ("LDEQ") served a Compliance Order on Texas Brine. Texas Brine denies that it is responsible for any aspect of the Compliance Order, including the management of surface water. A copy of LDEQ's Compliance Order is attached hereto as Exhibit E and is incorporated herein as if copied *in extenso*.

## **COUNT 1: CONTRACT INDEMNIFICATION**

20.

To the extent Texas Brine is found liable to OxyChem in arbitration for any damages prayed for or claims asserted by OxyChem in OxyChem's Statement of Claims, such liability and damages being denied, Vulcan must indemnify Texas Brine for at least 50% of those damages pursuant to Sections 12.03 and 12.3 of the Operating Agreements.[5]

---

[5] The Ad Hoc Division of this Court, in judgments, including those dated December 14, 2020, August 25, 2021, January 6, 2022, and January 18, 2022, dismissed Texas Brine's contractual and fraud claims against Vulcan, including

5

21.

Additionally, in the event OxyChem prevails on its default claim and is awarded possession of Texas Brine's Pipeline based on the alleged contractual defaults, the contractual indemnities contained in Sections 12.03 and 12.3 of the Operating Agreements also apply to the replacement value of the pipeline awarded to OxyChem.

22.

To the extent Texas Brine is found liable to the State of Louisiana for any damages prayed for or claims asserted by the State of Louisiana in its Petition for Damages and First Amending and Supplemental Petition for Damages, such liability and damages being denied, Vulcan must indemnify Texas Brine for at least 50% of those damages pursuant to Sections 12.03 and 12.3 of the Operating Agreements.

23.

To the extent Texas Brine incurs any expenses, costs, or penalties as a result of the Compliance Order issued by LDEQ or is liable in any way to LDEQ, LDNR, or any other state agency for the management of surface water, such liability being denied, Vulcan must indemnify Texas Brine for at least 50% of those expenses, costs, or penalties pursuant to Sections 12.03 and 12.3 of the Operating Agreements.

## **COUNT 2: TORT INDEMNIFICATION AND CONTRIBUTION**

24.

In the alternative, to the extent Texas Brine is found liable to OxyChem in arbitration for any damages prayed for or claims asserted by OxyChem in OxyChem's Statement of Claims, such liability and damages being denied, Vulcan must reimburse and indemnify Texas Brine in accordance with Vulcan's share of fault, which is at a minimum 15%, for damages that may have arisen as a result of the Sinkhole.

---

but not limited to judgments granting confusion of the Salt Lease and cross-termination of operating and lease contracts between Texas Brine and Vulcan, Texas Brine's quasi-contractual claims, including custom and practice between Texas Brine and Vulcan, Texas Brine's claims for fraud against Vulcan, and Texas Brine's claims under the Amended and Restated Operating and Supply Agreement. However, the Ad Hoc Division granted Texas Brine's appeals from those judgments, and those appeal are pending in the First Circuit. Should Texas Brine be successful in any of these appeals, Texas Brine asserts against Vulcan all rights, claims, and causes of action to which it is entitled.

6

25.

Further, Mr. Durland is liable to Texas Brine for tort indemnity/ contribution based on his wrongful conduct. Additionally, in the event OxyChem prevails on its default claim and is awarded possession of Texas Brine's Pipeline based on the alleged contractual defaults, this 15% tort indemnification/ contribution claim also applies to the replacement value of the pipeline awarded to OxyChem.

26.

To the extent Texas Brine is found liable to the State of Louisiana for any damages prayed for or claims asserted by the State of Louisiana in its Petition for Damages and First Amending and Supplemental Petition for Damages, such liability and damages being denied, Vulcan must reimburse and indemnify Texas Brine in accordance with Vulcan's share of fault, which is at a minimum 15%, for damages that may have arisen as a result of the Sinkhole.

27.

To the extent Texas Brine incurs any expenses, costs, or penalties as a result of the Compliance Order issued by LDEQ or is liable in any way to LDEQ, LDNR, or any other state agency for the management of surface water, such liability being denied, Vulcan must reimburse and indemnify Texas Brine in accordance with Vulcan's share of fault, which is at a minimum 15%, for any expenses, costs, or penalties that Texas Brine may incur.

28.

Correspondingly, Mr. Durland is also liable for tort indemnity/ contribution for any damages which may be payable by Texas Brine to the State of Louisiana and for any expenses, costs, or penalties incurred by Texas Brine as a result of the Compliance Order issued LDEQ or any liability to LDEQ, LDNR, or any other state agency for the management of surface water.

29.

Louisiana law treats intentional tortfeasors as more culpable than merely negligent tortfeasors, regardless of their respective degrees of fault. Thus, under Louisiana Civil Code article 2323(C), a negligent tortfeasor (such as Texas Brine) can recover from an intentional tortfeasor without regard to the comparative fault of the negligent plaintiff. Therefore, under article 2323(C), Texas Brine may recover from Vulcan without regard to Texas Brine's own comparative fault.

7

30.

Due to the Louisiana First Circuit Court of Appeal's findings that Vulcan committed intentional acts that, in part, caused the Sinkhole, Texas Brine's 55% fault allocation "shall not" reduce Texas Brine's claim for recovery of damages against Vulcan. LA. CIV. CODE art. 2323(C). Thus, because Vulcan has been adjudicated to be an intentional tortfeasor, Vulcan is liable to Texas Brine for up to 100% of the damages which may be owed by Texas Brine to OxyChem and the State of Louisiana.

## COUNT 3: REIMBURSEMENT

31.

In the alternative, pursuant to Section 12.6 of the Amended and Restated Operating and Supply Agreement and the custom and practice between Texas Brine and Vulcan, Texas Brine is entitled to reimbursement from Vulcan for any damages, losses, penalties, or expenses that Texas Brine may be deemed liable for, which is denied, to OxyChem, the State of Louisiana, and to the LDEQ, LDNR, or any other state agency for management of surface water.

## PRAYER FOR RELIEF

Texas Brine prays that there be Judgment in favor of Texas Brine and against Vulcan and Mr. Durland, holding that, to the extent Texas Brine is found liable to OxyChem in arbitration for any damages prayed for or claims asserted by OxyChem in OxyChem's Statement of Claims (including, but not limited to, damages related to OG1, OG2, OG3, OG11, OG12, other damages caused by the failure of the OG3 well/cavern system, the monetary value of the replacement costs of any Texas Brine assets which may be awarded to OxyChem under the doctrine of specific performance, and attorneys' fees), to the extent Texas Brine is found liable to the State of Louisiana for any damages prayed for or claims asserted by the State of Louisiana in its Petition for Damages and First Amending and Supplemental Petition for Damages, such liability and damages being denied by Texas Brine, and to the extent Texas Brine incurs any expenses, costs, or penalties as a result of the Compliance Order issued by LDEQ or is liable in any way to LDEQ, LDNR, or any other state agency for the management of surface water, Vulcan must indemnify Texas Brine under the Operating Agreements and in tort, contribution, and reimbursement, and further, Mr. Durland must also indemnify Texas Brine pursuant to tort principles and contribution. Texas Brine

further prays that, under Louisiana Civil Code article 2323(C), Vulcan shall be found liable to Texas Brine for up to 100% of any award to OxyChem in arbitration, any award of damages payable to the State of Louisiana, and any amounts of expenses, costs, or penalties incurred as a result of the Compliance Order issued by LDEQ or any liability to LDEQ, LDNR, or any other state agency for the management of surface water, such liability and damages being denied by Texas Brine. Texas Brine further prays that Mr. Durland be held liable to Texas Brine in tort, and that Vulcan and Mr. Durland be held liable to Texas Brine *in solido*.

LEOPOLD Z. SHER #12014
JAMES M. GARNER #19589
PETER L. HILBERT, JR. #6875
DARNELL BLUDWORTH #18801
CHRISTOPHER T. CHOCHELES #26848
JEFFREY D. KESSLER #30156
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, LLC**
909 Poydras Street, Twenty-eighth Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

-and-

TRAVIS J. TURNER, #29462
**TURNER LAW FIRM, LLC**
1026 East Worth Road, Suite D
Gonzales, Louisiana 70737
Telephone: (225) 644-2229
Facsimile: (225) 644-2266

**ATTORNEYS FOR TEXAS BRINE COMPANY, LLC**

**SHERIFF PLEASE SERVE:**
Legacy Vulcan, LLC
Through its Registered Agent for Service of Process:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

SERVICE INFORMATION FOR JACK DURLAND TO BE PROVIDED

9