UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEXAS BRINE CO., LLC | CIVIL ACTION |
| VERSUS | NO: 22-2649 |
| LEGACY VULCAN, LLC, ET AL. | SECTION: "A" (5) |

## ORDER AND REASONS

The following motion is before the Court: **Motion for Leave to Conduct Limited Jurisdictional Discovery (Rec. Doc. 11)** filed by the plaintiff, Texas Brine Co., LLC. Mr. Jack Durland, a defendant herein, has responded to the motion. The motion, submitted for consideration on October 12, 2022, is before the Court on the briefs without oral argument.

Texas Brine initiated this lawsuit in state court against Legacy Vulcan, LLC and its former employee Mr. John R. ("Jack") Durland seeking indemnity/ contribution/ reimbursement for amounts 1) that Texas Brine may be found liable for in arbitration proceedings with OxyChem (set to commence on May 1, 2023), 2) that Texas Brine may be found to owe the State of Louisiana for remedial/response costs related to the Sinkhole (the petition seeking this recovery is pending in the 24th JDC), and 3) that Texas Brine may have to pay to state agencies pursuant to a Compliance Order issued by LDEQ. Texas Brine's claims against Vulcan are based on contract as well as tort indemnification/ contribution; the claims against Mr. Durland are based on tort indemnity/ contribution. Texas Brine alleges that in the state court liability case (held in

1

the 23rd JDC for Assumption Parish and amended on appeal), Vulcan was found to have committed intentional acts solely for its economic benefit that contributed to causing the Sinkhole. (Rec. Doc. 1-1, Petition ¶ 12). Texas Brine further alleges that the finding of intentional fault against Vulcan was based on the actions of Mr. Durland, in particular an email that he authored and transmitted in 2004. (*Id.* ¶ 14). Texas Brine is a citizen of Texas and North Carolina. When Texas Brine filed the lawsuit it believed that Durland was a Texas citizen since he had been one in 2016 at the time of his last deposition.

Vulcan and Durland removed the case to federal court alleging diversity jurisdiction. The removing parties sought to immediately disabuse Texas Brine of the belief that Durland was a citizen of Texas (as he had been in the past) and as such prevented removal by destroying complete diversity. The removing parties argued that Durland was in fact a Florida domiciliary, and that in the alternative he was fraudulently joined in this lawsuit. Vulcan and Durland then moved for an expedited in person status conference in lieu of the typical scheduling conference with the Case Manager. (Rec. Doc. 10). Texas Brine, hesitant to accept Durland's contention that he was no longer a Texas citizen, responded with the instant Motion for Leave to Conduct Jurisdictional Discovery. (Rec. Doc. 11). Durland then filed an extensive motion for summary judgment hoping to receive an expeditious adjudication of his defenses.

In an Order entered on October 11, 2022, the Court cancelled the status conference that had been scheduled and informed the parties that the question of whether Durland was in fact diverse in citizenship from Texas Brine would have to be

determined first, and in Durland's favor, in order for the Court to have jurisdiction to consider his merits-based motion for summary judgment. (Rec. Doc. 24, Order). The Court explained why the specter of improper joinder, which had been mentioned more than once by the removing defendants, would actually impede Durland in his quest to have the Court consider his motion for summary judgment. (*Id.*).

Returning to the matter at hand, Texas Brine's Motion for Leave to Conduct Jurisdictional Discovery, Durland argues that the relief sought is now moot because Texas Brine did in fact propound jurisdictional discovery on Durland and he has responded.[1] While Durland erroneously contends that the jurisdictional question is whether he resided with an intention to remain indefinitely in Texas or North Carolina in the relevant period,[2] the Court is persuaded that he has established that he was a citizen of Florida in the relevant period.[3]

---

[1] Durland did limit his responses where he was convinced that the interrogatories were overly broad and completely irrelevant to the issue of citizenship. The Court agrees that questions about religious affiliation, voting history, personal assets and banking relationships are irrelevant to the citizenship inquiry.

[2] While it is tempting to argue that diversity jurisdiction exists because Durland is not a citizen of either of Texas Brine's states of citizenship, the law in this circuit rejects the notion that diversity jurisdiction can be established by negative inference and instead requires *affirmative* identification of each party's state of citizenship. *See Getty Oil Corp., a Div. of Texaco v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) ("We have stated repeatedly that when jurisdiction depends on citizenship, citizenship must be '*distinctly* and *affirmatively* alleged.'") (emphasis in original); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). Therefore, the facts and evidence produced by Durland to show that he was never domiciled in North Carolina, and that he has been domiciled *outside* of Texas since 2018, would be insufficient to meet his burden absent the evidence produced to establish that he was domiciled in Florida in the relevant period.

[3] In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court. *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) (citing *Kanzelberger v. Kanzelberger,* 782 F.2d 774, 776 (7th Cir.1986)).

Durland has submitted a declaration in which he explains that he retired in 2015, at which time he and his wife sold their home in Texas and moved to Colorado. (Rec. Doc. 21-3, Exhibit 3). In 2021 they moved to their current home in Florida (actually purchased in 2015) and now claim their sole homestead exemption in that state. Durland is registered to vote in Florida, has a Florida driver's license, and all three of his vehicles are registered in Florida. Durland provided documentation for each of these claims. Durland is 69 years old and he and his wife moved to Florida intending to make it their permanent home and they have no plans to make their home anywhere else. (*Id.* ¶ 12).

Citizenship requires residency and the intent to return or remain in the state. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 815 (5th Cir. 2007) (citing *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954); *Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48 (1989)). Durland has established both with respect to his Florida citizenship during the relevant period. In fact, Durland's showing appears to be unassailable. The parties are completely diverse in citizenship (the jurisdictional amount is certainly satisfied) and the Court has subject matter jurisdiction over the claims between all parties to this matter. Additional jurisdictional discovery is not necessary.

Accordingly;

**IT IS ORDERED** that the **Motion for Leave to Conduct Limited Jurisdictional Discovery (Rec. Doc. 11)** filed by the plaintiff, Texas Brine Co., LLC, is dismissed as moot as explained above.

---

Thus, the relevant citizenship period in this case is July 29, 2022 (petition filed in state court) to August 12, 2022 (case removed).

**IT IS FURTHER ORDERED** that the stay pertaining to Durland's **Motion for Summary Judgment (Rec. Doc. 22)** is vacated. The motion is reset for submission on **November 23, 2022** on the briefs.

**IT IS FURTHER ORDERED** that the Case Manager for Section A shall notice a telephone scheduling conference for the purpose of entering a scheduling order in this case.[4]

October 13, 2022

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[4] If the parties can agree on a joint CMO in lieu of the scheduling conference then the Court would be amenable to cancelling the scheduling conference and adopting their CMO. Likewise, if the parties can agree that it would be helpful to have a status conference with the Court in lieu of the scheduling conference then the Court would be amenable to that suggestion so long as there is agreement as to the timing of the conference and the reasons for having it.